IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CV-290-D

| | |
|---|---|
| BENNY POWELL, ) | |
| ) | |
| Claimant/Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings. Benny Powell ("Claimant") seeks judicial review of the Commissioner's denial of his application for disability insurance benefits ("DIB"). After a thorough review of the record and consideration of the briefs submitted by counsel, the Court recommends granting Claimant's Motion for Judgment on the Pleadings [DE-25] and denying the Commissioner's Motion for Judgment on the Pleadings [DE-27].

## STATEMENT OF THE CASE

On May 7, 2007, Claimant filed his applications for a period of disability and DIB, alleging disability beginning on March 14, 2007. (R. 88-92.) Claimant alleged disability due to prostate cancer, hypertension, anxiety, depression, insomnia, surgery related problems, urinary problems, Peyronie's disease, and hypertension. (R. 88-92, 100.) His applications were denied initially, and upon reconsideration. (R. 41-46, 50-57.) Claimant then requested a hearing before an Administrative Law Judge ("ALJ"), which took place on October 24, 2008. (R. 19-40.) Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. Id. The ALJ issued a decision denying Claimant's application on December 17, 2002. (R. 6-16.)

The Appeals Council denied Claimant's request for review on May 8, 2009 (R. 1-3), rendering the ALJ's decision a "final decision" for purposes of judicial review. See Walls v. Barnhart, 296 F.3d 287, 289 (4th Cir. 2002) (noting that when the Appeals Council denies a request for review, the underlying decision by the ALJ becomes the agency's final decision for purposes of appeal). Claimant timely commenced the instant action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. The Standard of Review and Social Security Framework

The scope of judicial review of a final decision regarding disability benefits under the Social Security Act, 42 U.S.C. § 405(g), is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. Walls, 296 F.3d at 290; 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). This Court must not weigh the evidence, as it lacks the authority to substitute its judgment for that of the Commissioner. Walls, 296 F.3d at 290. Thus, in determining whether substantial evidence supports the Commissioner's decision, the Court's review is limited to whether the ALJ analyzed all of the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. See Sterling Smokeless Coal Co. v. Akers, 131F.3d 438, 439-40 (4th Cir. 1997).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed in a disability case. See 20 C.F.R. §§ 404.1520 and 416.920. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. If the

claimant is not engaged in substantial gainful activity, then at step two the ALJ determines whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities. If no severe impairment is found, the claim is denied. If the claimant has a severe impairment, at step three the ALJ determines whether the claimant's impairment meets or equals the requirements of one of the Listings of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. If the impairment meets or equals a Listing, the person is disabled per se. If the impairment does not meet or equal a Listing, at step four the claimant's residual functional capacity ("RFC") is assessed to determine if the claimant can perform his or her past work despite the impairment; if so, the claim is denied. However, if the claimant cannot perform his or her past relevant work, at step five the burden shifts to the Commissioner to show that the claimant, based on his or her age, education, work experience and RFC, can perform other substantial gainful work. The Commissioner often attempts to carry its burden through the testimony of a vocational expert ("VE"), who testifies as to jobs available in the economy based on the characteristics of the claimant.

In this case, Claimant alleges the following errors: (1) the ALJ erred by failing to give controlling weight to his treating physician's opinion; (2) the ALJ erred by finding Claimant not totally credible with regard to his pain; and (3) the ALJ's findings regarding Claimant's RFC were not supported by substantial evidence. Clmt.'s Brief at 3-10.

## II.  The ALJ's Findings

The ALJ proceeded through the five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920. (R. 10-16.) The ALJ first found that Claimant had not engaged in substantial gainful activity since March 14, 2007, the alleged onset date. (R. 11); see 20 C.F.R.

3

§§ 404.1520(b) & 416.920(b). The ALJ then proceeded to step two and found that Claimant suffered from the severe impairments of chronic obstructive pulmonary disease, urinary incontinence, mild coronary disease, and depression. (R. 11); see 20 C.F.R. §§ 404.1520(c) & 416.920(c). However, at step three the ALJ determined that Claimant's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. § 404, Subpart P, App. 1. (R. 12); see 20 C.F.R. §§ 404.1520(d)-(e) & 416.920(d)-(e). Next, the ALJ determined – based on all the evidence in the record, including medical records, and Claimant's subjective complaints – that Claimant had the RFC "to perform medium work with lifting and carrying 50 pounds occasionally and 25 pounds frequently; stand and walk with normal breaks for a total of about 6 hours in an 8-hour day; sit with normal breaks for a total of about 6 hours in an 8-hour day; able to understand and remember simple instructions; maintain sufficient concentration, persistence, and pace to perform simple, routine, repetitive tasks; interact frequently with co-workers, supervisors, and members of the public; and adapt to routine changes in job setting as defined in 20 C.F.R. 404.1567(c)." (R. 13); see 20 C.F.R. §§ 404.1520(e) & 416.920(e). At step four, the ALJ found that Claimant was unable to perform his past relevant work as a tank truck driver, meter reader, hardware sales person, and plumber's helper. (R. 15); see 20 C.F.R. 404.1565 & 416.965. At step five, the ALJ determined that based on Claimant's age, education, work experience and RFC, he could perform other jobs that exist in significant numbers in the national economy. (R. 15-16); see 20 C.F.R. §§ 404.1560(c) & 416.960(c). As a result, the ALJ found that Claimant was not under a "disability," as defined in the Social Security Act, from March 14, 2007, through the date of his decision. (R. 16); see 20 C.F.R. §§ 404.1520(g) & 416.920(g).

### III. The Administrative Hearing

#### A. Claimant's Testimony

Claimant testified at his administrative hearing held on October 24, 2009, to the following: (R. 19-35.) He was 54 years old at the time of the hearing. (R. 23.) He is married and lives with his wife. (R. 24.) He graduated from high school and attended Johnston Community College for truck driver training. (Id.) He received a license to drive trucks. (Id.)

Claimant does not currently work. (Id.) From 2000 to 2007, he worked at Keenan Transport Company, where he drove a gas tanker and pumped the gas from the tanker upon delivery. (Id.) On the job, he had to lift hoses that weighed as much as 150 pounds. (R. 25.) Before working at Keenan Transport Company, Claimant worked at Lowe's from 1999 to 2000, where he helped customers, stocked bins and kept the store swept and clean. (Id.) At Lowe's, he had to lift approximately 50 to 75 pound objects. Prior to Lowe's from 1996 to 1998, Claimant worked for Select Plumbing as a plumber's assistant and was responsible for lifting up to 50 pounds. (R. 26.) From 1976 to 1996, Claimant worked with Carolina Power and Light as a meter reader, which mainly required him to walk, bend and climb and occasionally lift up to 50 pounds. (Id.)

Claimant stopped working because he had prostate cancer, which required surgery and resulted in incontinence. (R. 27-28.) He is unable to reach the bathroom before urinating most of the time. (R. 28.) Claimant wears incontinence pads but they are generally ineffectual. (Id.) He can urinate up to 15 or 25 times an hour, depending on his fluid intake. (R. 29.) His incontinence problem has not gotten better over time. (Id.) Claimant saw a doctor to discuss

5

surgical options to help with his incontinence. (R. 34.) He ultimately decided not to get surgery because he had such a hard time recovering from his prostatectomy. (Id.)

Claimant also suffers from depression. (R. 30.) He takes medication for his depression but it does not help much. (Id.) Claimant has problems breathing and has been diagnosed with chronic obstructive pulmonary disease ("COPD"). (R. 31.) He smoked but quit in 1992. (Id.) Doctors told him that his prostate cancer was metabolic and is likely the cause of a lot of Claimant's medical problems, including his COPD. (Id.) He coughs and wheezes frequently, and any exertion makes him short of breath. (Id.)

Claimant spends most of his day in the house. (R. 32.) He tries to keep the house clean for his wife, who works, and he watches television. (Id.) Claimant used to do yard maintenance and enjoyed fishing and gardening, but he can rarely do those activities anymore. (Id.) Claimant can drive and go to the grocery store, but does not do so often because of his incontinence. (R. 33.)

### B. Vocational Expert Testimony

A vocational expert, Kimberly Ingler, testified at Claimant's hearing. (R. 35-40.) The VE classified Claimant's past job as a meter reader as light, semi-skilled work; his job as a truck driver as medium, semi-skilled work; his job as a sales person in a hardware store as light, semi-skilled work; and his job as a plumber's helper as heavy, semi-skilled work. (R. 36.)

The ALJ then posed the following hypothetical to the VE:

> I would like you to assume a hypothetical claimant the same age, education, occupational background of this claimant before us today. Hypothetical claimant number one would retain the Residual Functional Capacity to lift and carry 50 pounds occasionally, 25 pounds frequently; he can stand or walk with normal breaks for about six hours in an eight hour day; can sit with normal breaks for a total of about six hours in an eight hour day; hypothetical claimant number one would retain the residual mental functional capacity to understand and remember

Case 5:09-cv-00290-D   Document 35   Filed 07/16/10   Page 6 of 14

simple instructions; be able to maintain sufficient concentration, persistence and pace to perform simple, routine, repetitive tasks; can interact frequently with co-workers, supervisors, members of the public; and can adapt to routine changes in the job setting. I also would like to add an additional environmental limitation to the physical RFC that the—this work related activity should be performed in an environment that would avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation, and respiratory irritants. Would hypothetical claimant number one be capable of performing any of the claimant's past work?

(R. 36-37.) The VE answered in the negative because Claimant's past jobs were all semi-skilled. (R. 37.) The ALJ then asked the VE whether there were other jobs that existed in significant numbers that the hypothetical claimant could perform. (Id.) The VE answered that there were, and listed the jobs of grocery bagger, hand packager and marker. (Id.)

The ALJ then posed a second hypothetical to the VE. He asked whether a hypothetical claimant number two, who was the same age, and had the same education, and occupational background as Claimant, who needed to take breaks every 30 minutes or less, whose symptoms were severe enough to interfere frequently with the attention and concentration required to perform even simple work tasks, and who would need significant accommodations to maintain a full-time work schedule, could perform work in the regional or national economy. (R. 38.) The VE answered in the negative. (Id.)

## IV. Claimant's Arguments

### A. The ALJ Erred in Weighing Claimant's Treating Physician's Opinion

Claimant first alleges that the ALJ erred in weighing his treating physician's opinion. The Court agrees. Because the court recommends remand based on the ALJ's failure to provide an adequate analysis of Claimant's treating physician's opinion, the Court will not address Claimant's other arguments.

7

Under the Commissioner's regulations, controlling weight is given to the opinion of a treating source on the issues of the nature and severity of an impairment if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1995).

When an ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); see also Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). In addition, an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p. Generally, a decision by the ALJ regarding the weight of a medical opinion will "not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209 (4th Cir. 1999) (unpublished opinion) (internal quotations omitted). Additionally, the ALJ is not bound by a treating physician's opinion regarding whether a claimant is disabled, as that opinion is one reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

On November 21, 2007, Claimant's treating physician, Dr. Charles Williams, filled out a questionnaire and provided it to Claimant's counsel, stating that Claimant must urinate every 30 minutes or more frequently. (R. 373.) He also noted that Claimant suffers from depression, which is a typical diagnosis for a cancer patient. (R. 374.) Dr. Williams concluded that Claimant's symptoms interfere with the attention and concentration needed to perform simple tasks. (Id.) Further, Dr. Williams opined that Claimant is not capable of engaging in full-time work. (R. 374.)

The ALJ did not afford Dr. Williams' opinion controlling weight. (R. 15.) Instead, the ALJ gave Dr. Williams' opinion some weight but gave significant weight to the opinions of the State Agency medical consultants. (R. 15.) The ALJ explained that he did not give Dr. Williams' opinion controlling weight because "it contradicts medical evidence from specialists, e.g. urologists and cardiologists as well as his own medical records." (Id.) The ALJ did not elaborate further. The Court concludes that the ALJ failed to provide the necessary analysis to support his reason for giving Dr. Williams' opinion less than controlling weight.

The ALJ failed to acknowledge the length, frequency, nature and extent of Claimant's treatment relationship. An ALJ is not required to engage in an analysis of each of these factors in every ruling that bears on the weight given a medical opinion. Warren v. Astrue, No. 5:08-CV-149-FL, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009) (addressing the factors that an ALJ may consider in determining the weight of a physician's medical opinion if the ALJ does not accord it controlling weight). Nonetheless, the ALJ implicitly recognized these factors by citing to a few of Dr. Williams' treatment notes, and in particular records from December 2005

9

that show Dr. Williams has been treating Claimant for a significant period of time. See Yurek v. Astrue, No: 5:08-CV-500-FL, 2009 WL 2848859, at *5 (E.D.N.C. Sept. 2, 2009).

However, the ALJ failed to provide the necessary discussion of the supportability and consistency of Dr. Williams' opinion; in other words, the ALJ failed to explain his rationale for giving Dr. Williams' opinion less than controlling weight. First, the ALJ never mentioned specifically the content of Dr. Williams' opinion or that of the State Agency medical consultants. See Sidbury v. Astrue, No. 7:08-CV-168-FL, 2009 WL 3029741, at *8-9 (E.D.N.C. Sept. 22, 2009) (remanding the case back to the Commissioner for further proceedings, in part, because the ALJ failed to include in his analysis the statements made by the treating physician regarding the claimant's headaches and also his reason for finding them inconsistent with Claimant's previous statements and the opinions of other medical professionals). Accordingly, it is impossible to tell if it was the entire opinion, or parts of it, with which the ALJ disagreed. The issue is further confused because the ALJ states that Dr. Williams' opinion contradicts that of specialists, including cardiologists, but Dr. Williams did not state that Claimant was impaired due to COPD or any other heart-related impairment in the questionnaire that he filled out.[1] (R. 373-75.)

Most importantly, after the ALJ concluded that he would give Dr. Williams' opinion only "some weight," he provided no examples of the contradictory medical evidence from Dr. Williams' own treating notes or from experts that support his conclusion. Without some

---

[1] Dr. Williams did diagnose Claimant with "moderate[ly]" severe COPD, which is aggravated by exercise, activity, respiratory infections, and changes in the weather. (R. 243, 389.) However, Dr. Williams did not include any respiratory or pulmonary limitations in his opinion of Claimant's symptoms and work ability. (R. 389.) This is because the questionnaire that Dr. Williams filled out predated Claimant's complaints of chronic shortness of breath, wheezing and coughing, which led to the diagnosis of COPD. However, as discussed above, because the ALJ did not discuss the content of Dr. William's opinion, the Court is unclear what, in particular, the ALJ finds unsupported.

10

explanation for his decision to afford Dr. Williams' opinion less than controlling weight, the ALJ failed to comply with the applicable Social Security regulation and Fourth Circuit precedent. See Soc. Sec. R. 96-2p; Koonce, 166 F.3d at 1209.

In his prior discussion of Claimant's credibility, the ALJ referenced some of the medical records of the specialists who saw Claimant, as well as some of Dr. Williams' treatment notes. (R. 14.) Claimant complained about some of the same impairments that Dr. Williams described in his opinion. Accordingly, it is possible to apply some of the ALJ's credibility analysis—and the alleged contradictions noted—to Dr. Williams' opinion. However, the records do not undermine Dr. Williams' opinion.

First, the ALJ addressed a perceived contradiction between Claimant's testimony and Dr. Williams' treatment notes:

> The claimant testified that his depression began secondary to his urinary incontinence; however Dr. Williams' records revealed that his depression was due to prostate cancer and his mother's death. In another visit, he reported that his depressed mood was aggravated by his prostate surgery complications and stressful work schedule.

(R. 14.) The Court is not clear in what way this evidence provides a contradiction. First, during his hearing Claimant stated that he did not suffer from depression prior to "[his] problems." (R. 30.) Although the testimony prior to that statement dealt with his incontinence, it is not clear to the Court that the onset of depression following Claimant's "problems" refers only to the complications he suffered after his surgery, rather than to his cancer as well. Second, there is no question that Claimant suffers from incontinence due to his prostatectomy. Therefore, a statement that he suffers from depression due to cancer does not contradict a statement that he suffers from depression due to complications from his prostatectomy.

11

Next, the ALJ cited to a treatment record from Dr. Williams dated May 12, 2008, which noted that Claimant's depression was well controlled. (R. 14.) The ALJ used this evidence to contradict Claimant's testimony that his depression had not improved. (Id.) However, this evidence does not contradict the substance of Dr. Williams' opinion. Dr. Williams noted that Claimant suffers from weakness, fatigue, and frequent urine loss. (R. 373.) When asked if there were emotional factors that contribute to the severity of Claimant's symptoms and limitations, Dr. Williams answered in the affirmative and noted depression as a psychological condition affecting his patient. First, the treatment note regarding the improved depression occurred in 2008, after Dr. Williams completed the questionnaire regarding Claimant's impairments. But even if Claimant is no longer suffering from depression, there has been no change to the underlying limitation that Dr. Williams noted: namely urinary frequency occurring ever 30 minutes or less.

The ALJ next discussed Claimant's incontinence. He noted that Claimant reported on only two visits to Dr. Cully C. Carson, a urological surgeon, that he was using multiple incontinence pads each day, but that Claimant did not mention the frequency of incontinence to which he testified as his hearing. Again, the Court does not see an inconsistency. There is no notation in any of the medical records of the frequency of Claimant's incontinence, but Claimant stated to various doctors, including Dr. Williams, Dr. Carson, and Dr. Marc Benevides, Claimant's treating urologist, that he was suffering from severe incontinence. (R. 155, 157, 162, 195, 198, 224, 231, 233, 235, 246, 376). The fact that the medical records do not indicate the number of times in an hour that Claimant suffers incontinence, but do discuss "constant leakage" and urinary incontinence, does not constitute a contradiction. Finally, the ALJ noted that

12

Claimant last visited Dr. Carson, in September 2007, "which belies the severity of this problem." (R. 14.) The ALJ also stated that Claimant "did not seek another opinion concerning his urinary incontinence problems and possible solution." (R. 14.) The ALJ is mistaken. The ALJ never mentioned the medical records of Dr. Benevides, Claimant's treating urologist, whom Claimant last saw in January 2008. (R. 376.) Claimant saw Dr. Benevides on numerous occasions and complained about urinary incontinence to him. (157-58, 376).

Because the ALJ failed to discuss the reasons for his decision to afford Dr. Williams' opinion less than controlling weight, it is the Court's opinion that the case should be remanded back to the Commissioner so that the ALJ can provide the necessary analysis. Even extrapolating from the ALJ's discussion of Claimant's credibility, he failed to provide the kind of contradictory medical records, from either specialists or Dr. Williams, that would support his decision to afford Dr. Williams' opinion less that controlling weight. The fact that contradictions may exist between Dr. Williams' opinion and his own treatment notes or other medical evidence is unavailing because the ALJ failed to note them in his opinion, and it is not the province of this Court to make those determinations in the first instance. Soc. Sec. R. 96-2p (providing that an ALJ's decision must include <u>specific reasons</u> for the weight given to a treating physician's medical opinion so that those reasons are clear to subsequent reviewers). Accordingly, it is the Court's opinion that the case should be remanded to the Commissioner for further proceedings consistent with this Memorandum and Recommendation.

## **CONCLUSION**

The undersigned **RECOMMENDS** that Claimant's motion for judgment on the pleadings be **GRANTED**, that the Commissioner's motion for judgment on the pleadings be

**DENIED**, and that the case be remanded for further proceedings consistent with this Memorandum and Recommendation**.** The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

This the 16th day of July, 2010.

_____
DAVID W. DANIEL
United States Magistrate Judge